51

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA,

             Plaintiff,                    CRIMINAL NO. 03-80617

v.                                              HON. AVERN COHN

D-1 TAREK MAKKI,                    VIO:  18 U.S.C. § 371
     a/k/a "Senior Wolf",                  18 U.S.C. § 545
D-2 ALI MAKKI                                   18 U.S.C. § 1001
D-3 ADHAM MACKIE                                18 U.S.C. § 1343
     a/k/a "Adam Mackie",                  18 U.S.C. § 1956(a)(2)(A)
D-4 KAMAL TURFAH,                               18 U.SC.  § 1956(h)
D-5 JIHAD MAKKI,                                18 U.S.C. § 2320
     a/k/a "Joe Makki",

             Defendants.

_____/

## SECOND SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

## GENERAL ALLEGATIONS

### I. The Conspiracy and the Roles of the Defendants

1.     At all times material to this indictment, there existed an illegal

smuggling/importation operation which was comprised of several individuals, some of

whom are detailed below, which operated globally, but in particular, in, the Detroit,

1

Michigan area, Los Angeles, California area, Jakarta, Indonesia, Canada, Mexico and elsewhere. The operation essentially operated as an off-shore counterfeiting scheme involving the smuggling and/or clandestine importation into the United States of thousands of cases of counterfeit Zig Zag® cigarette paper products that were manufactured/repackaged in among other locations, Jakarta, Indonesia and elsewhere.

2. At various times material to this indictment, Anand Nanwani and Jaipal Singh caused to be printed in Indonesia booklets, cases and cartons bearing counterfeit Zig Zag® markings, which markings were identical with and substantially indistinguishable from genuine marks in use and registered for those goods on the principal register in the United States Patent and Trademark Office, and the use of which was likely to cause confusion, to cause mistake and to deceive.

3. At various times material to this indictment, Anand Nanwani and Jaipal Singh operated a factory in Jakarta, Indonesia that produced counterfeit Zig Zag® cigarette paper products for shipment to the United States. When in operation, the workforce ranged from 20 to 50 employees who were tasked with packaging inferior grade cigarette paper products, that is; either Zig Zag® cigarette papers that were packaged in booklets that are blue in color (hereinafter referred to as "Blue" Zig Zag® cigarette papers) obtained from distributors in Australia, or Zig Zag® and non-Zig Zag® produced papers of an unknown origin, into the U.S. bound counterfeit packaging

2

procured by Nanwani and Singh.

4.   At all times material to this indictment, the counterfeit Zig Zag® cigarette paper products were then distributed and sold throughout the United States at prices well-below those that are, or can be offered, for the genuine corresponding Zig Zag® cigarette paper products in the United States.

5. At all times material to this indictment, illegal proceeds of the operation were sent from the United States to Jakarta, Indonesia via Western Union and/or financial institution wire transfers in the names of the co-conspirators or their real or fictitious nominees.  The defendants and their co-conspirators utilized fictitious company names and invoices bearing fictitious company names to disguise the origin and destination of the shipped counterfeit Zig Zag® cigarette paper products.

6.   At all times material to this indictment, Anand Nanwani and Jaipal Singh were not licensed to manufacture, nor distribute Zig Zag® cigarette paper products.

7.   At all times material to this indictment, TAREK MAKKI, ADHAM MACKIE, KAMAL TURFAH,  JIHAD MAKKI and ALI MAKKI, defendants herein, were not licensed to manufacture, nor distribute Zig Zag® cigarette paper products.

8.   At all times material to this indictment, TAREK MAKKI was the organizer and leader of this operation to traffick in counterfeit ZIG ZAG papers. He traveled to Indonesia and stayed for weeks at a time to oversee the Jakarta operation. He was

3

responsible for directing Anand Nanwani and Jaipal Singh to produce the counterfeit material and he facilitated the smuggling of the counterfeit Zig Zag cigarette papers into the United States. In this regard, he would provide Nanwani and Singh with fictitious company names and invoices to be use in the exportation of the counterfeit Zig Zag cigarette papers from Jakarta. These fictitious company names and invoices would ultimately be provided to U.S. Customs to clear customs in the United States. Additionally, TAREK MAKKI would make extensive use of nominees to wire money payments to Nanwani and Singh and to deliver the counterfeit merchandise to various interim storage locations to await final distribution in the United States.

9.  At all times material to this indictment, ADHAM MACKIE was also a leader in this organization to traffick in counterfeit ZIG ZAG papers. He was also responsible for the transfer of monetary instruments or funds to Anand Nanwani and Jaipal Singh, in Jakarta,  at the direction of TAREK MAKKI and  would also recruit and make extensive use of nominees to wire money payments to Jakarta all in furtherance of the operation to traffick in counterfeit ZIG ZAG papers.

10.  At all times material to this indictment, KAMAL TURFAH utilized at least two unregistered alleged businesses to facilitate the purchasing, importation, selling and distribution of counterfeit ZIG ZIG papers with regard to the organization's trafficking in counterfeit ZIG ZAG papers. He would also wire transfer funds to Jakarta

4

in furtherance of the counterfeit Zig Zag operation. He was provided direction by both TAREK MAKKI and ADHAM MACKIE with regard to his activities within the organization.

11. At all times material to this indictment, JIHAD MAKKI was initially used to create this organization to traffick in counterfeit ZIG ZAG papers. Thereafter he was used to deliver counterfeit ZIG ZAG papers to a location within the Eastern of Michigan and would also wire transfer funds to Jakarta at the request of TAREK MAKKI in furtherance of the counterfeit Zig Zag operation.

12. At all times material to this indictment, ALI MACKIE was a nominee in this organization to traffick in counterfeit ZIG ZAG papers. He was provided direction by both TAREK MAKKI and ADHAM MACKIE. ALI MACKIE would deliver counterfeit ZIG ZAG papers to various storage locations determined by TAREK MAKKI within the United States. He would also wire transfer funds to Jakarta at the request of ADHAM MACKIE in furtherance of the counterfeit Zig Zag operation.

13. At all times material to this indictment, various individuals, not named as defendants in this Information, both known and unknown to the Grand Jury, participated in a number of roles as co-conspirators in the offenses charged and performed acts and made statements in furtherance thereof.

## II.  Background and Terminology

14.    At all times material to this indictment, Bollore, Inc. was an internationally known distributor of specialty paper products, and has for over a century, used the "Zig-Zag" trademark and the depiction of a bearded man (the "Smoking Man Design") trademark (collectively, the "Zig-Zag® Trademarks") in connection with its cigarette paper products, cartons, cases and booklets.  Both the Zig Zag® and Smoking Man Design® trademarks are registered with the United States Patent and Trademark Office.

15.  At all times material to this indictment, Bollore owned the trademark registrations for Zig Zag® Trademarks in the United States and in various countries throughout the world, and has granted an exclusive license to North Atlantic Operating Company, Inc. (hereinafter "NATC") in the United States for the importation and distribution of Zig Zag® cigarette paper products.

16.  At all times material to this indictment, Bollore owned a paper mill in France where it manufactured the bobbins of Zig-Zag paper pursuant to various supply agreements.  Bollore produced the highest quality paper (those packaged in booklets that are either White or Orange (hereinafter "White and Orange papers") for the U.S. market and for NATC to distribute.  NATC performs a strict quality control function on each and every shipment of Zig Zag White and Orange papers it receives from Bollore.  NATC has the right to reject shipments that do not meet with its quality

6

control standards.

17. At all times material to this indictment, Bollore also manufactured separate, differing bobbins of papers under a supply agreement with Republic Technologies. Those Republic papers have differing specifications than the US White and US Orange papers, and are sold in non-US markets. After their manufacture, the NATC bobbins of paper are then sent by Bollore to another manufacturing plant in France where the paper bobbins are manufactured into booklets, cartons, and shipping cases pursuant to NATC's specifications. The manufacture of the Zig Zag paper packaging is done pursuant to a manufacturing agreement NATC has with Republic (the owner of the packaging manufacturing plant).

18. At all times material to this indictment, the White and Orange Zig-Zag cigarette papers were EXCLUSIVELY licensed to the North Atlantic Trading Company and its subsidiary, North Atlantic Operating Company, and are only manufactured for sale in the US. Bollore has other customers around the world and manufactures different papers pursuant to Republic's specifications for those markets. The specifications for those products are of inferior quality than the product for the NATC that is sold and distributed in the United States.

## COUNT ONE

(18 U.S.C. § 371 – Conspiracy to Traffic in,
and Smuggle Counterfeit Goods)

D-1 TAREK MAKKI,
     a/k/a "Senior Wolf",
D-2 ALI MAKKI,
D-3 ADHAM MACKIE,
     a/k/a "Adam Mackie",
D-4 KAMAL TURFAH,
D-5 JIHAD MAKKI,
     a/k/a "Joe Makki"


1.  The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

### CONSPIRACY OFFENSE

That from a date unknown, but at least as early as May 1, 2000 through approximately December 2004, both dates being approximate, the exact dates being unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere, TAREK MAKKI, ALI MAKKI, ADHAM MACKIE, KAMAL TURFAH, and JIHAD MAKKI, defendants herein, did combine, conspire, confederate and agree with each other and with others known and unknown to the Grand Jury, to commit offenses against the United States, to wit: (1) trafficking in goods, that is: counterfeit Zig Zag®

8

cigarette paper products and knowingly using a counterfeit mark on and in connection with such goods, in violation of Title 18, United States Code, Section 2320; (2) fraudulently and knowingly smuggling merchandise into the United States contrary to law, in violation of Title 18, United States Code, section 545; and (3) wire fraud, in violation of Title 18, United States Code, Section 1343.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that the defendants would and did:

a. arrange to have inferior grade cigarette papers from various suppliers outside of the United States shipped to Indonesia;

b. produce counterfeit Zig Zag® cigarette paper cases, cartons, booklets and packaging;

c. disassemble in Indonesia said inferior grade cigarette papers from various suppliers and place in the counterfeit Zig Zag® packaging;

d. ship into the United States through various ports of entry, including Detroit, Michigan, said counterfeit Zig Zag® product;

e. cause to be distributed and sold within the United States, said counterfeit Zig Zag® product, with the intent that Bollore, NATC and the ultimate consumer would be thereby defrauded by the inferior non-genuine counterfeit product.

f. receive and cause to be wire transferred from the United States to

9

Indonesia electronic funds which represented payment for the counterfeit Zig Zag®
product.

        g. make false material declarations under oath as witnesses, and otherwise
obstruct justice, in civil case hearings then being held before the United States District
Court in the Northern District of Texas, Dallas Division in the matter entitled, <u>Bollore,
S.A., v. Import Warehouse INC., et al</u>, Civil Action NO. 3:99CV 1196-R.


<u>OVERT ACTS</u>

        In furtherance of the unlawful conspiracy, and to effect the objects thereof, the
defendants, and their co-conspirators committed and caused to be committed the
following overt acts, among others, in the Eastern District of Michigan:

        1.  In or about August of 1999, Anand Nanwani, had a conversation about
producing counterfeit packaging for Zig Zag® cigarette paper products with Jihad
Makki at a trade show in Las Vegas, Nevada.

        2.  In or about March of 2000, Anand Nanwani and Jaipal Singh, begun
production of counterfeit Zig Zag® cigarette paper products at a factory in Jakarta,
Indonesia.

        3. On or about March 16, 2000, KAMAL TURFAH facilitated the importation
of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located

in Jakarta, Indonesia into the United States.

4. On or about June 15, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

5. On or about June 21, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

6. On or about June 27, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

7. On or about July 10, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

8. On or about July 12, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

9. On or about August 4, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

10. On or about August 15, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

11. On or about August 15, 2000, KAMAL TURFAH facilitated the importation of another a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

12. On or about August 23, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

13.    On or about September 1, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

14.    On or about September 5, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

15.    On or about September 18, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

16.    On or about September 19, 2000, KAMAL TURFAH facilitated the

2:03-cr-80617-AC-SDP    Doc # 48    Filed 08/17/05    Pg 13 of 50    Pg ID 102

importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

17. On or about September 25, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

18. On or about September 30, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

19. On or about October 5, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

20. On or about October 11, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

21. On or about October 11, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

22. On or about October 13, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a

factory located in Jakarta, Indonesia into the United States.

23.    On or about October 24, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

24.    On or about December 4, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

25.    On or about December 4, 2000, KAMAL TURFAH facilitated the importation of another quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

26.    On or about December 11, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

27.    On or about December 19, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

28.    On or about December 22, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

14

29.   On or about December 27, 2000, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

30. On or about January 30, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

31. On or about February 2, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

32. On or about February 6, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

33.   On or about February 10, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

34.   On or about February 12, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

35.   On or about February 15, 2001, KAMAL TURFAH facilitated the

importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

36. On or about February 17, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

37. On or about February 19, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

38. On or about February 22, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

39. On or about February 26, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

40. On or about March 1, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

41. On or about March 15, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located

in Jakarta, Indonesia into the United States.

42. On or about March 21, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

43. On or about April 4, 2001, KAMAL TURFAH facilitated the importation of a quantity of counterfeit Zig Zag® cigarette paper products from a factory located in Jakarta, Indonesia into the United States.

44. On or before December 11, 2001, Anand Nanwani and Jaipal Singh, caused to be shipped counterfeit Zig Zag® cigarette paper products, which were destined to be delivered in Detroit, Michigan, from Jakarta, Indonesia to Ontario, Canada.

45. On or before December 11, 2001, ADHAM MACKIE, caused to be shipped counterfeit Zig Zag® cigarette paper products, which were destined to be delivered in Detroit, Michigan, from Jakarta, Indonesia to Ontario, Canada.

46. On or before December 4, 2002, Anand Nanwani and Jaipal Singh, caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to Detroit, Michigan.

47. On or before December 4, 2002, ADHAM MACKIE caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to Detroit, Michigan.

48. On or before June 25, 2003, Anand Nanwani and Jaipal Singh, caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to Detroit, Michigan.

49. On or before June 25, 2003, TAREK MAKKI, caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to Detroit, Michigan.

50. On or before June 25, 2003, ALI MAKKI did intentionally traffic and attempt to traffic in counterfeit Zig Zag® cigarette paper products shipped from Jakarta, Indonesia to Detroit, Michigan.

51. In or before February 2004, Anand Nanwani and Jaipal Singh, caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to the United States.

52. In or before February 2004, TAREK MAKKI and ADHAM MACKIE, caused to be shipped counterfeit Zig Zag® cigarette paper products from Jakarta, Indonesia to the United States.

53. In or about December 2004, Anand Nanwani and Jaipal Singh, had a meeting in the Los Angeles, California area with others to discuss repayment of debts incurred as a result of counterfeit Zig Zag® cigarette paper product production in Indonesia.

54. In or about December 2004, TAREK MAKKI and ADHAM MACKIE, had a meeting in the Los Angeles, California area with others to discuss repayment of debts incurred as a result of counterfeit Zig Zag® cigarette paper product production in Indonesia.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO

(18 U.S.C. § 1956(h) – Conspiracy to Launder Monetary Instruments)

D-1 TAREK MAKKI,
    a/k/a "Senior Wolf",
D-2 ALI MAKKI,
D-3 ADHAM MACKIE,
    a/k/a "Adam Mackie",
D-4 KAMAL TURFAH,
D-5 JIHAD MAKKI,
    a/k/a "Joe Makki"

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

## CONSPIRACY OFFENSE

That from a date unknown, but at least as early as May 1, 2000 through

19

approximately June 2003, both dates being approximate, the exact dates being

unknown to the Grand Jury, in the Eastern District of Michigan, and elsewhere,

TAREK MAKKI, ALI MAKKI, ADHAM MACKIE, KAMAL TURFAH, and JIHAD

MAKKI, defendants herein, did combine, conspire, confederate and agree with each

other and with others known and unknown to the Grand Jury, to commit offenses

against the United States, to wit: to violate Title 18, United States Code, Sections

1956(a)(1)(A)(i), 1956(a)(1)(B)(i), and 1956(a)(2)(A), that is, knowing that the

property involved represented the proceeds of some form of unlawful activity, as

defined in Title 18, United States Code, Section 1956(c)(1), conducted and caused to

be conducted financial transactions which involved the proceeds of a specified

unlawful activity, to wit:

> (1) intentionally trafficking in goods, that is: counterfeit Zig Zag® cigarette paper products and knowingly using a counterfeit mark on and in connection with such goods, ( in violation of Title 18, United States Code, Section 2320 ); (2) fraudulently and knowingly smuggling merchandise into the United States contrary to law, (in violation of Title 18, United States Code, section 545) and wire fraud (in violation of Title 18, United States Code, Section 1343) as more particularly described in Count One of this information, which description is incorporated herein by reference;

(1) with the intent to promote the carrying on of the said specified unlawful activity,

and (2) knowing that the transaction was designed in whole and in part to conceal and

disguise the nature, the location, the source, the ownership, and the control of the

proceeds of said specified unlawful activity, and (3) did transmit and attempt to

transmit monetary instruments or funds from a place in the United States to or through

a place outside of the United States with the intent to promote the carrying on of the

said specified unlawful activity.

## MANNER AND MEANS OF THE CONSPIRACY

It was a part of the conspiracy that the defendants, and their co-conspirators,

would and did:

a.  wire transfer funds from a place in the United States, that is; the

Detroit, Michigan area, to a place outside the United States, that is; Indonesia, utilizing

Western Union and other financial institutions, such as banks.

b.  in transferring the funds from the United States to Indonesia, utilized

proceeds originating from the sale of counterfeit Zig Zag® cigarette paper products in

the United States;

c.  promote the carrying on of the illegal counterfeiting, smuggling and

wire fraud scheme by the continual, repeated transferring of funds from the United

States to Indonesia;

d.  engage in financial transactions within the United States which were

designed in whole and in part to conceal or disguise the nature, the location, the source,

the ownership, or the control of the proceeds of the illegal operation;

e.  create false invoices and other fictitious documentation, along with the

use of real and fictitious nominees in financial transactions, to further disguise the true nature and extent of the illegal operation.

## OVERT ACTS

In furtherance of the unlawful conspiracy, and to effect the objects thereof, the defendants, and their co-conspirators committed and caused to be committed the following overt acts, among others, in the Eastern District of Michigan and elsewhere:

1. On or about March 8, 2000, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

2. On or about May 15, 2000, defendant TAREK MAKKI caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

3. On or about March 16, 2000, defendant TAREK MAKKI caused to be wired approximately $3,000.00 from the United States to Indonesia via Western Union.

4. On or about March 28, 2000, defendant ADHAM MACKIE caused to be wired approximately $1,500.00 from the United States to Indonesia via Western Union.

5. On or about March 28, 2000, defendant JIHAD MAKKI received by wire approximately $1,500.00 in Indonesia from the United States via Western Union.

6. On or about April 11, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

7. On or about April 11, 2000, defendant TAREK MAKKI received by wire

approximately $2,999.00 in Indonesia from the United States via Western Union.

8. On or about April 11, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

9. On or about April 11, 2000, defendant JIHAD MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

10. On or about April 11, 2000, defendant JIHAD MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

11. On or about April 11, 2000, defendant JIHAD MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

12. On or about April 23, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

13. On or about April 23, 2000, defendant TAREK MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

14. On or about April 24, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

15. On or about May 2, 2000, defendant KAMAL TURFAH caused to be wired

23

approximately $7,535.00 from the United States to Indonesia via Comerica Bank.

16. On or about May 24, 2000, defendant KAMAL TURFAH caused to be wired approximately $7,035.00 from the United States to Indonesia via Comerica Bank.

17. On or about May 25, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

18. On or about June 1, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

19. On or about June 1, 2000, defendant TAREK MAKKI caused to be wired approximately $2,900.00 from the United States to Indonesia via Western Union.

20. On or about June 15, 2000, defendant TAREK MAKKI caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

21. On or about June 27, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

22. On or about June 27, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

23. On or about June 27, 2000, defendant JIHAD MAKKI Makki caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

24. On or about June 27, 2000, defendant TAREK MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western

24

Union.

25. On or about June 27, 2000, defendant TAREK MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

26. On or about July 3, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

27. On or about July 3, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

28. On or about July 3, 2000, defendant TAREK MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

29. On or about July 10, 2000, defendant TAREK MAKKI caused to be wired approximately $5,000.00 from the United States to Indonesia via Standard Federal.

30. On or about July 12, 2000, defendant TAREK MAKKI caused to be wired approximately $6,000.00 from the United States to Indonesia via Standard Federal.

31. On or about July 13, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,400.00 from the United States to Indonesia via Western Union.

32. On or about July 13, 2000, defendant TAREK MAKKI received by wire approximately $2,400.00 in Indonesia from the United States via Western Union.

33. On or about July 24, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

34. On or about July 24, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

35. On or about July 24, 2000, defendant TAREK MAKKI received by wire approximately $1,750.00 in Indonesia from the United States via Western Union.

36. On or about August 14, 2000, defendant TAREK MAKKI caused to be wired approximately $2,600.00 from the United States to Indonesia via Western Union.

37. On or about August 18, 2000, defendant TAREK MAKKI caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

38. On or about August 18, 2000, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

39. On or about August 28, 2000, defendant KAMAL TURFAH caused to be wired approximately $18,040.00 from the United States to Indonesia via Comerica Bank.

40. On or about September 5, 2000, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

41. On or about September 10, 2000, defendant TAREK MAKKI received by

26

wire approximately $2,999.00 in Indonesia from the United States via Western Union.

42. On or about September 10, 2000, defendant TAREK MAKKI additionally received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

43. On or about September 15, 2000, defendant JIHAD MAKKI caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

44. On or about September 15, 2000, defendant TAREK MAKKI received by wire approximately $2,865.00 in Indonesia from the United States via Western Union.

45. On or about September 17, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

46. On or about September 17, 2000, defendant TAREK MAKKI received by wire approximately $2,500.00 in Indonesia from the United States via Western Union.

47. On or about September 27, 2000, defendant TAREK MAKKI received by wire approximately $2,999.00 in Indonesia from the United States via Western Union.

48. On or about September 28, 2000, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

49. On or about September 29, 2000, defendant TAREK MAKKI received by

wire approximately $2,050.00 in Indonesia from the United States via Western Union.

50. On or about October 1, 2000, defendant TAREK MAKKI received by wire approximately $2,500.00 in Indonesia from the United States via Western Union.

51. On or about October 1, 2000, defendant TAREK MAKKI received by wire approximately $2,250.00 in Indonesia from the United States via Western Union.

52.  On or about October 2, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,850.00 from the United States to Indonesia via Western Union.

53. On or about October 2, 2000, defendant TAREK MAKKI received by wire approximately $2,850.00 in Indonesia from the United States via Western Union.

54. On or about October 2, 2000, defendant TAREK MAKKI additionally caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

55. On or about October 08, 2000, defendant KAMAL TURFAH caused to be wired approximately $2,999.00 from the United States to Indonesia via Western Union.

56. On or about October 13, 2000, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

57. On or about October 22, 2000, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

58. On or about October 26, 2000, defendant TAREK MAKKI caused to be

28

wired approximately $6,250.00 from the United States to Indonesia via Standard Federal.

59. On or about October 26, 2000, defendant TAREK MAKKI caused to be wired approximately $8,750.00 from the United States to Indonesia via Standard Federal.

60. On or about October 30, 2000, defendant TAREK MAKKI caused to be wired approximately $9,750.00 from the United States to Indonesia via Standard Federal.

61. On or about October 30, 2000, defendant TAREK MAKKI caused to be wired approximately $9,950.00 from the United States to Indonesia via Standard Federal.

62. On or about October 31, 2000, defendant KAMAL TURFAH caused to be wired approximately $9, 540.00 from the United States to Indonesia via Comerica Bank.

63. On or about November 3, 2000, defendant TAREK MAKKI caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

64. On or about November 9, 2000, defendant TAREK MAKKI caused to be wired approximately $6,000.00 from the United States to Indonesia via Standard

Federal.

65. On or about November 9, 2000, defendant TAREK MAKKI caused to be wired approximately $22,500.00 from the United States to Indonesia via Standard Federal.

66. On or about November 14, 2000, defendant TAREK MAKKI caused to be wired approximately $3,500.00 from the United States to Indonesia via Standard Federal.

67. On or about November 21, 2000, defendant TAREK MAKKI caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

68. On or about November 21, 2000, defendant TAREK MAKKI additionally caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

69. On or about November 30, 2000, defendant TAREK MAKKI caused to be wired approximately $6,000.00 from the United States to Indonesia via Standard Federal.

70. On or about November 30, 2000, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

71. On or about December 6, 2000, defendant TAREK MAKKI caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

72. On or about December 6, 2000, defendant ADHAM MACKIE caused to be wired approximately $2,900.00 from the United States to Indonesia via Western Union.

73. On or about December 6, 2000, defendant KAMAL TURFAH caused to be wired approximately $2,900.00 from the United States to Indonesia via Western Union.

74. On or about December 7, 2000, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

75. On or about December 18, 2000, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

76. On or about December 20, 2000, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

77. On or about January 9, 2001, defendant TAREK MAKKI caused to be wired approximately $9,500.00 from the United States to Indonesia via Standard Federal.

78. On or about January 17, 2001, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

31

79. On or about January 21, 2001, defendant TAREK MAKKI received by wire approximately $2,300.00 in Indonesia from the United States via Western Union.

80. On or about January 25, 2001, defendant ALI MAKKI caused to be wired approximately $2,900.00 from the United States to Indonesia via Western Union.

81. On or about January 30, 2001, defendant JIHAD MAKKI caused to be wired approximately $2,855.00 from the United States to Indonesia via Western Union.

82. On or about January 30, 2001, defendant TAREK MAKKI received by wire approximately $2,290.00 in Indonesia from the United States via Western Union.

83. On or about February 5, 2001, defendant TAREK MAKKI received by wire approximately $2,375.00 in Indonesia from the United States via Western Union.

84. On or about January 30, 2001, defendant AL MAKKI caused to be wired $2,290.00 from the United States to Indonesia via Western Union.

85. On or about February 5, 2001, defendant TAREK MAKKI additionally received by wire approximately $2,375.00 in Indonesia from the United States via Western Union.

86. On or about February 6, 2001, defendant ADHAM MACKIE caused to be wired approximately $8,000.00 from the United States to Indonesia via a financial institution.

87. On or about February 6, 2001, defendant ADHAM MACKIE caused to be

32

wired approximately $8,046.00 from the United States to Indonesia via a financial institution.

88.  On or about February 8, 2001, defendant ALI MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

89. On or about February 8, 2001, defendant TAREK MAKKI received by wire approximately $2,000.00 in Indonesia from the United States via Western Union.

90.  On or about February 12, 2001, defendant ADHAM MACKIE caused to be wired approximately $9,000.00 from the United States to Indonesia via a financial institution.

91. On or about February 12, 2001, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

92. On or about February 22, 2001, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

93. On or about March 2, 2001, defendant KAMAL TURFAH caused to be wired approximately $9,040 from the United States to Indonesia via Comerica Bank.

94. On or about March 29, 2001, defendant KAMAL TURFAH caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

33

95. On or about March 29, 2001, defendant KAMAL TURFAH additionally caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

96. On or about March 29, 2001, defendant KAMAL TURFAH additionally caused to be wired approximately $9,540.00 from the United States to Indonesia via Comerica Bank.

97. On or about April 3, 2001, defendant TAREK MAKKI caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

98. On or about April 18, 2001, defendant ALI MAKKI caused to be wired approximately $3,000.00 from the United States to Indonesia via Western Union.

99. On or about April 18, 2001, defendant TAREK MAKKI received by wire approximately $3,000.00 in Indonesia from the United States via Western Union.

100. On or about April 18, 2001, defendant TAREK MAKKI additionally received by wire approximately $3,000.00 in Indonesia from the United States via Western Union.

101. On or about April 18, 2001, defendant TAREK MAKKI additionally received by wire approximately $3,000.00 in Indonesia from the United States via Western Union.

102. On or about May 10, 2001, defendant TAREK MAKKI caused to be wired

34

approximately $2,865.00 from the United States to Indonesia via Western Union.

103.  On or about June 27, 2001, defendant TAREK MAKKI caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

104. On or about October 22, 2001, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

105.  On or about October 24, 2001, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

106. On or about October 30, 2001, defendant TAREK MAKKI caused to be wired approximately $9,000.00 from the United States to Indonesia via Standard Federal.

107.  On or about November 12, 2001, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

108.  On or about December 14, 2001, defendant ADHAM MACKIE caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

109. On or about December 27, 2001, defendant TAREK MAKKI caused to be wired approximately $7,500.00 from the United States to Indonesia via Standard Federal.

110.  On or about January 3, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

111.  On or about January 9, 2002, defendant TAREK MAKKI caused to be wired approximately $2,375.00 from the United States to Indonesia via Western Union.

112. On or about January 11, 2002, defendant TAREK MAKKI caused to be wired approximately $7,000.00 from the United States to Indonesia via Standard Federal.

113. On or about January 16, 2002, defendant TAREK MAKKI caused to be wired approximately $7,000.00 from the United States to Indonesia via Standard Federal.

114.  On or about January 17, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

115.  On or about January 20, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

116.  On or about January 22, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

117.  On or about January 23, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

118.  On or about January 25, 2002, defendant TAREK MAKKI caused to be

36

wired approximately $1,500.00 from the United States to Indonesia via Western Union.

119.  On or about February 7, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

120.  On or about March 12, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

121.  On or about March 17, 2002, defendant TAREK MAKKI caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

122.  On or about April 12, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

123.  On or about April 17, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

124.  On or about April 21, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

125.  On or about April 29, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

126.  On or about May 23, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

127.  On or about June 3, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

128. On or about June 4, 2002, defendant TAREK MAKKI caused to be wired approximately $2,500.00 from the United States to Indonesia via Western Union.

129. On or about July 27, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

130. On or about August 5, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

131. On or about August 15, 2002, defendant TAREK MAKKI caused to be wired approximately $2,175.00 from the United States to Indonesia via Western Union.

132. On or about September 3, 2002, defendant TAREK MAKKI caused to be wired approximately $5,000.00 from the United States to Indonesia via Standard Federal.

133. On or about September 4, 2002, defendant TAREK MAKKI caused to be wired approximately $2,108.00 from the United States to Indonesia via Western Union.

134. On or about September 15, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

135. On or about September 16, 2002, defendant TAREK MAKKI caused to be wired approximately $2,865.00 from the United States to Indonesia via Western Union.

136. On or about September 27, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

2:03-cr-80617-AC-SDP    Doc # 48    Filed 08/17/05    Pg 39 of 50    Pg ID 128

137. On or about September 27, 2002, defendant TAREK MAKKI caused to be wired approximately $5,000.00 from the United States to Indonesia via Standard Federal.

138. On or about October 19, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

139. On or about October 20, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Western Union.

140. On or about October 22, 2002, defendant TAREK MAKKI caused to be wired approximately $8,000.00 from the United States to Indonesia via Standard Federal Bank.

141. On or about October 27, 2002, defendant TAREK MAKKI caused to be wired approximately $1,900.00 from the United States to Indonesia via Western Union.

141. On or about October 28, 2002, defendant TAREK MAKKI caused to be wired approximately $2,000.00 from the United States to Indonesia via Standard Federal Bank.

142. On or about December 17, 2002, defendant TAREK MAKKI caused to be wired approximately $5,000.00 from the United States to Indonesia via Standard Federal Bank.

143. On or about December 20, 2002, defendant TAREK MAKKI caused to be

wired approximately $6,000.00 from the United States to Indonesia via Standard Federal.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNT THREE

### (18 U.S.C. § 2320 – Trafficking in Counterfeit Goods)

D-1 TAREK MAKKI
D-2 ALI MAKKI

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. That from a date unknown and continuing to on or about June 25, 2003, in the Eastern District of Michigan and elsewhere, TAREK MAKKI and ALI MAKKI, defendants herein, did intentionally traffic and attempt to traffic in goods, to wit: approximately 80 boxes of counterfeit Zig Zag® cigarette paper products seized on June 25, 2003, and knowingly use a counterfeit mark on and in connection with such goods, in violation of Title 18, United States Code, Sections 2320 and 2.

## COUNT FOUR

40

(18 U.S.C. § 2320 – Trafficking in Counterfeit Goods)

D-3 ADHAM MACKIE

    1.  The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

    2.  The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

    3.  That from a date unknown and continuing to on or about December 4, 2002, in the Eastern District of Michigan and elsewhere, ADHAM MACKIE, defendant herein, did intentionally traffic and attempt to traffic in goods, to wit: approximately 30 boxes of counterfeit Zig Zag® cigarette paper products seized on December 4, 2002, and knowingly use a counterfeit mark on and in connection with such goods, in violation of Title 18, United States Code, Sections 2320 and 2.

## COUNT FIVE

(18 U.S.C. § 2320 – Trafficking in Counterfeit Goods)

D-3 ADHAM MACKIE

    1.  The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

41

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. That from a date unknown and continuing to on or about December 11, 2001, in the Eastern District of Michigan and elsewhere, ADHAM MACKIE, defendant herein, did intentionally traffic and attempt to traffic in goods, to wit: approximately 3,300 boxes of counterfeit Zig Zag® cigarette paper products seized in Ontario, Canada in December , 2001, and knowingly use a counterfeit mark on and in connection with such goods, in violation of Title 18, United States Code, Sections 2320 and 2.

## COUNT SIX

(18 U.S.C. § 1001– False Statement)

D-1 TAREK MAKKI

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. On or about May 4, 2004, in Wayne County, in the Eastern District of Michigan, Southern Division, TAREK MAKKI, defendant herein, in a matter within the jurisdiction of the U.S. Department of Justice, an agency of the United States, did

42

knowingly and willfully make a false, fictitious and fraudulent material statement, in that the defendant claimed that he stopped distributing and selling counterfeit Zig Zag® cigarette paper products after his arrest in June 2003 , which said statement the defendant then and there knew was false, in that TAREK MAKKI continued to traffic, distribute and sell counterfeit Zig Zag® cigarette paper products in the U.S. until at least September 2004, said date being approximate, the exact date being unknown,  in violation of Title 18, United States Code, Section 1001.

## COUNT SEVEN

(18 U.S.C. § 1001– False Statement)

D-3 ADHAM MACKIE

1.  The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2.  The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. On or about May 4, 2004, in Wayne County, in the Eastern District of Michigan, Southern Division, ADHAM MACKIE, defendant herein, in a matter within the jurisdiction of the U.S. Department of Justice, an agency of the United States, did knowingly and willfully make a false, fictitious and fraudulent material statement, in

43

that the defendant claimed that he stopped distributing and selling counterfeit Zig

Zag® cigarette paper products in January 2003 , which said statement the defendant

then and there knew was false, in that ADHAM MACKIE continued to traffic,

distribute and sell counterfeit Zig Zag® cigarette paper products in the U.S. until at

least September 2004, said date being approximate, the exact date being unknown, in

violation of Title 18, United States Code, Section 1001.

### COUNT EIGHT

(18 U.S.C. § 1001– False Statement)

D-1 TAREK MAKKI

    1.  The allegations contained in paragraphs one (1) through eighteen (18) of the

General Allegations of this Indictment are realleged in this Count and are incorporated

by reference as if fully set forth herein.

    2.  The allegations contained in Count One of this Indictment are realleged in

this Count and are incorporated by reference as if fully set forth herein.

    3.  On or about June 15, 2004, in Wayne County, in the Eastern District of

Michigan, Southern Division, TAREK MAKKI, defendant herein, in a matter within

the jurisdiction of the U.S. Department of Justice, an agency of the United States, did

knowingly and willfully make a false, fictitious and fraudulent material statement, in

that the defendant claimed that he stopped distributing and selling counterfeit Zig

Zag® cigarette paper products in July 2003 , which said statement the defendant then and there knew was false, in that TAREK MAKKI continued to traffic, distribute and sell counterfeit Zig Zag® cigarette paper products in the U.S. until at least September 2004, said date being approximate, the exact date being unknown, in violation of Title 18, United States Code, Section 1001.

### COUNT NINE

(18 U.S.C. § 1001– False Statement)

D-3 ADHAM MACKIE

    1.  The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

    2.  The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

    3.  On or about July 22, 2004, in Wayne County, in the Eastern District of Michigan, Southern Division, ADHAM MACKIE, defendant herein, in a matter within the jurisdiction of the U.S. Department of Justice, an agency of the United States, did knowingly and willfully make a false, fictitious and fraudulent material statement, in that the defendant claimed that he stopped distributing and selling counterfeit Zig Zag® cigarette paper products after his arrest in October 2003 , which said statement

45

the defendant then and there knew was false, in that ADHAM MACKIE continued to traffic, distribute and sell counterfeit Zig Zag® cigarette paper products in the U.S. until at least September 2004, said date being approximate, the exact date being unknown, in violation of Title 18, United States Code, Section 1001.

## COUNT TEN

(18 U.S.C. § 1001– False Statement)

D-1 TAREK MAKKI

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. On or about July 27, 2004, in Wayne County, in the Eastern District of Michigan, Southern Division, TAREK MAKKI, defendant herein, in a matter within the jurisdiction of the U.S. Department of Justice, an agency of the United States, did knowingly and willfully make a false, fictitious and fraudulent material statement, in that the defendant claimed that he stopped distributing and selling counterfeit Zig Zag® cigarette paper products in June-July 2003 , which said statement the defendant then and there knew was false, in that TAREK MAKKI continued to traffic, distribute

46

and sell counterfeit Zig Zag® cigarette paper products in the U.S. until at least September 2004, said date being approximate, the exact date being unknown, in violation of Title 18, United States Code, Section 1001.

## COUNTS ELEVEN THROUGH FOURTEEN

(18 U.S.C. § 1956(a)(2)(A) – Laundering of Monetary Instruments)

D-4 KAMAL TURFAH

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. The allegations contained in Count Two of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

4. That on or about the dates listed below, in the Eastern District of Michigan, Southern Division, Tarek Makki, not named as a defendant herein, and KAMAL TURFAH, defendant herein did knowingly and willfully transfer and attempt to transfer and did aid and abet each other in the transfer and attempt to transfer monetary instruments and/or funds in the approximate amounts as further described below from a place in the United States, that is the Eastern District of Michigan, to a place outside

47

the United States, that is Jakarta, Indonesia with the intent to promote the carrying on of a specified unlawful activity, that is (1) intentionally trafficking in goods, that is: counterfeit Zig Zag® cigarette paper products and knowingly using a counterfeit mark on and in connection with such goods, (in violation of Title 18, United States Code, Section 2320); (2) fraudulently and knowingly smuggling merchandise into the United States contrary to law, (in violation of Title 18, United States Code, Section 545) and wire fraud, (in violation of Title 18, United States Code, Section 1343) as more particularly described in Count One of this information, which description is incorporated herein by reference; each such transfer and attempt to transfer being a separate count of the indictment:

| COUNT | DATE | MONETARY INSTRUMENT/FUNDS | AMOUNT |
|-------|------|---------------------------|--------|
| 34 | 03/02/2001 | Comerica Bank Wire Transfer | $9,040.00 |
| 35 | 03/29/2001 | Comerica Bank Wire Transfer | $9,540.00 |
| 36 | 03/29/2001 | Comerica Bank Wire Transfer | $9,540.00 |
| 37 | 03/29/2001 | Comerica Bank Wire Transfer | $9,540.00 |

all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

## COUNT FIFTEEN

(18 U.S.C. § 1956(a)(2)(A) – Laundering of Monetary Instruments)

48

D-5 JIHAD MAKKI

1. The allegations contained in paragraphs one (1) through eighteen (18) of the General Allegations of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

2. The allegations contained in Count One of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

3. The allegations contained in Count Two of this Indictment are realleged in this Count and are incorporated by reference as if fully set forth herein.

4. That on or about January 30, 2001, in the Eastern District of Michigan, Southern Division, Tarek Makki, not named as a defendant herein, and JIHAD MAKKI, defendant herein, did knowingly and willfully transfer and attempt to transfer and did aid and abet each other in the transfer and attempt to transfer a monetary instrument and/or funds by use of a Western Union wire transfer in the approximate amount of $2, 855.00 from a place within the United States, that is the Eastern District of Michigan, to a place outside the United States, that is Jakarta, Indonesia with the intent to promote the carrying on of a specified unlawful activity, that is (1) intentionally trafficking in goods, that is: counterfeit Zig Zag® cigarette paper products and knowingly using a counterfeit mark on and in connection with such goods, (in violation of Title 18, United States Code, Section 2320); (2) fraudulently and

49

knowingly smuggling merchandise into the United States contrary to law, (in violation of Title 18, United States Code, section 545) and wire fraud, (in violation of Title 18, United States Code, Section 1343) as more particularly described in Count One of this information, which description is incorporated herein by reference; each such transfer and attempt to transfer being a separate count of the indictment, all in violation of Title 18, United States Code, Sections 1956(a)(2)(A) and 2.

THIS IS A TRUE BILL

_____
FOREPERSON

STEPHEN J. MURPHY
United States Attorney

_____
ERIC M. STRAUS
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9648

_____
GARY M. FELDER
Assistant United States Attorney
211 W. Fort St., Ste. 2001
Detroit, MI 48226
(313) 226-9742

DATE: August   17, 2005